UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-689-D

PAMELA STITH,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-18, DE-21] pursuant to Fed. R. Civ. P. 12(c). Claimant Pamela Stith ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on June 9, 2014, alleging disability beginning November 26, 2011 (amended from April 6, 2012). (R. 33–34, 216–29). Both claims were denied initially and upon reconsideration. (R. 71–130, 142–

150). A hearing before the Administrative Law Judge ("ALJ") was held on March 17, 2016, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 31–70). On March 28, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 7–248). On May 25, 2016, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of

3

Claimant's residual functional capacity ("RFC") because the hypothetical posed to the VE failed to include Claimant's concentration, persistence, or pace limitation; and (2) failure to provide an adequate rationale for the weight assigned to Claimant's treating source. Pl.'s Mem. [DE-19] at 7, 10.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the amended alleged onset date. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: depression, anxiety, post-traumatic stress disorder, and methamphetamine abuse/dependence. *Id.* The ALJ also found Claimant had the following non-severe impairments: obesity, occasional headaches, hypertension, diabetes mellitus, attention deficit disorder, chronic obstructive pulmonary disease ("COPD"), and gout/arthritis. (R. 12–14). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild restriction in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in regard to concentration, persistence, or pace, with no episodes of decompensation. (R. 15).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels but with the following restrictions: limited to simple, routine tasks in a low-stress job, defined as having only occasional changes in the work setting, and occasional interaction with the public. (R. 15–22).

4

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a real estate clerk, retail store manager, and management trainee. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23).

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed

5

by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Maintaining Concentration, Persistence, or Pace

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order for a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. *Id.*; *Russel v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (per curiam) (holding the ALJ's hypothetical question "adequately contemplated all of [claimant's] impairments and resulting limitations" as evidenced by the record). In other words, the hypothetical to the VE must be based on an accurate RFC. *See Massey v. Colvin*, No. 1:13-CV-965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) ("VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC.") (citing *Walker*, 889 F.2d at 50–51).

Here, Claimant contends that the ALJ erred in assessing her RFC, specifically by failing

6

to account for her moderate limitations in concentration, persistence, or pace, in contravention of the holding in *Mascio*. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court implicitly acknowledged there could be instances where a moderate limitation in concentration, persistence, or pace at step three does not require a limitation in RFC; however, there is no doubt that the failure to explain such a result is error requiring remand. *Id.* ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. . . . . But because the ALJ here gave no explanation, a remand is in order.").

In this case, the ALJ found Claimant to have moderate difficulties in regard to concentration, persistence, or pace. (R. 15). The RFC formulated by the ALJ, while it provided a limitation to simple, routine tasks in a low-stress job, defined as having only occasional changes in the work setting, with occasional interaction with the public, does not adequately address Claimant's ability to stay on task as required by *Mascio*. The limitations imposed by the ALJ relate to task complexity, and the court has previously held that a limitation to performing simple tasks with few workplace changes addressed difficulties with concentration and persistence, but not pace. *See Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015); *see also Guyton v. Colvin*, No. 7:15-CV-59-FL, 2016 WL 716515, at

7

*3–4 (E.D.N.C. Feb. 5, 2016). The ALJ did not adopt a limitation to address Claimant's moderate difficulty in maintaining the pace necessary to stay on task and it is not evident from the ALJ's decision why such limitation would not be necessary. Cases addressing pace generally look to whether or not the ALJ has provided a production limitation in the RFC. *See, e.g., Sizemore v. Berryhill*, No. 16-1301, 2017 WL 4675712 (4th Cir. Oct. 17, 2017) (holding that limitations working in a low stress *non-production* job with no public contact were sufficient to account for moderate limitation in concentration, persistence, or pace); *Bowen v. Berryhill*, No. 5:16-CV-65-F, 2017 WL 1194462 (E.D.N.C. Mar. 31, 2017) (holding that an RFC of simple, routine, repetitive tasks, *no production* work and only occasional interaction with other people was sufficient to account for moderate limitation in concentration, persistence, or pace); *Lee v. Colvin*, No. 5:15-CV-142-D, 2016 WL 816784, at *1–2 (E.D.N.C. Mar. 15, 2016) (finding that an RFC including a limitation against *"fast paced or quota based* work" comports with *Mascio*) (emphasis added); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. Aug. 19, 2015) (finding that RFC limitations to a *"low production* occupation" accounted for the claimant's pace, "no constant change" accounted for persistence, and "no loud noises" accounted for concentration) (emphasis added). Here, there is no similar production limitation.

The Commissioner contends that the ALJ did not err with respect to the RFC because *Mascio* recognizes that the ALJ may find limitations in concentration, persistence, or pace, while also finding that these limitations have no effect on the claimant's ability to work. Def.'s Mem. [DE-21] at 6. As such, the Commissioner argues it would have been appropriate to exclude such limitations in the RFC. *Id.* The court agrees with the Commissioner's premise, but does not find it dispositive in this case. The ALJ must explain why a claimant's moderate difficulties in concentration, persistence, or pace do not translate into limitations in the RFC, *Mascio*, 780 F.3d

8

at 638, but failed to do so in this case.

The ALJ summarized the relevant opinion evidence in the record with respect to Claimant's mental difficulties. She gave less weight to Dr. Jerome Albert, an examining physician, who opined that Claimant

> [M]ay have difficulty sustaining attention to perform routine repetitive tasks because of her PTSD, her major depression, which is severe in nature and an anxiety disorder. She would have difficulty getting along with fellow workers and supervisors particularly male. . . . The examiner doubts she could tolerate the stress and pressures associated with day-to-day work activities.

(R. 21). The ALJ afforded less weight to this opinion, deeming it "an overstatement of the claimant's limitations based on a one-time examination," and stating the opinion appeared to be "heavily influenced by the claimant's subjective statements" and "not consistent with the objective findings." *Id.* Similarly, in a joint examining source statement, Dr. Ashly Weeks and Dr. E.J. Burgess opined that Claimant, "may have difficulty sustaining attention to perform simple repetitive task[s]. She would likely have difficulty relating well to fellow workers and supervisors, given her depressive symptoms. Her ability to tolerate the stress associated with day-to-day work activity would probably be limited." *Id.* The ALJ also afforded this opinion less weight for the same reasons provided for Dr. Albert's opinion. However, the ALJ later stated that she gave "great weight to the opinions of these psychologists that the claimant has mild limitation in activities of daily living and moderate limitations in the areas of social interaction and concentration, persistence, and pace." *Id.* The ALJ briefly described the opinions of non-examining state agency psychological consultants, who found Claimant had no medically determinable mental impairment, affording less weight to them. *Id.* Lastly, the ALJ considered a treating medical source statement from Dr. Ralph Berg, who opined that "the claimant's ability to perform most of the mental demands of work was markedly limited and that she met the 'B

9

criteria' and the 'C criteria' in the Mental Listing of Impairments." (R. 22) The ALJ afforded "little to no" weight to Dr. Berg's opinion, stating, "[t]he severity of the limitations offered are not supported by Dr. Berg's own treatment records nor by the longitudinal treatment records in the file." *Id.* Dr. Berg also stated, "This lady is essentially incompetent and unable to maintain any form of employment. She is absolutely useless." *Id.* The ALJ afforded no weight to this opinion, stating that this characterization of Claimant was extremely rude and insensitive. *Id.* Considering the ALJ summarized the medical evidence, provided "less weight" to all of the opinion evidence—non-examining physician, examining physician, and treating physician alike—and then afforded Drs. Albert, Weeks, and Burgess "great weight" as it relates to their opinions, it is unclear what evidence the ALJ relied upon in deciding the RFC and assessing Claimant's limitations with respect to concentration, persistence, or pace.

Remand for further proceedings is the appropriate remedy in cases such as this where "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The Fourth Circuit has made clear that it is not the role of the court to remedy such failures by engaging in the required analysis in the first instance. *Fox v. Colvin*, 632 F. App'x 750, 754 (4th Cir. Dec. 17, 2015) (per curiam) ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford*, 734 F.3d at 296 (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, it is recommended that the case be remanded for the ALJ to sufficiently explain how her finding of moderate difficulties in concentration, persistence, or pace are accounted for in the RFC.

## 2. Dr. Berg's Opinion

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, '[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-

2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[1]

An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-47, 2006 WL 2565246, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends the ALJ erred by only providing conclusory statements regarding why she afforded "little to no weight" to Dr. Berg's opinions, and not explaining how the limitations provided in the opinion are inconsistent with the record. Pl.'s Mem. [DE-19] at 12. The ALJ summarized and assessed Dr. Berg's opinion as follows:

> On March 2, 2016, Dr. Raph Berg provided a treating medical source statement. He said that the claimant's ability to perform most of the mental demands of work was markedly limited and that she met the "B criteria" and the "C criteria" in the Mental Listing of Impairments (Exhibit 12F). I give little to no weight to these opinions. The severity of the limitations offered are not supported by Dr. Berg's own treatment records nor by the longitudinal treatment records in the file. I also give no weight to his statements on matters that are reserved to the Commissioner of the Social Security Administration. Further, I give no weight to his statement that, "This lady is essentially incompetent and unable to maintain any form of employment. She is absolutely useless." The medical records do not reflect that the claimant is "incompetent." The matter of employment is on a topic reserved to the Commissioner. Furthermore, characterizing the claimant is "absolutely useless" is extremely rude and insensitive, especially coming from a treating provider who purports to specialize in mental health issues.

(R. 22). The ALJ is not required to discuss all the relevant factors listed in § 404.1527(c), but "must give good reasons for the weight assigned to a treating source's opinion." *Harrison v. Berryhill*, No. 4:16-CV-227-FL, 2017 WL 3669630, at *3 (E.D.N.C. Aug. 7, 2017) (citations and internal quotation marks omitted), *adopted by* 2017 WL 3669515 (Aug. 24, 2017).

---

[1] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

The ALJ provided one appropriate reason for discounting Dr. Berg's opinion—her finding that Dr. Berg commented on an issue reserved to the Commissioner. Nevertheless, it is unclear from the decision which treatment records or what aspects of Claimant's longitudinal records conflict with Dr. Berg's opinion. The Commissioner proposes certain medical records—particularly pertaining to Claimant's history of drug addiction—to support the ALJ's finding. Def.'s Mem. [DE-22] at 11–12. However, it is not appropriate for the court to speculate as to the records actually relied upon by the ALJ. *See Fox*, 632 F. App'x at 755. Accordingly, it is recommended that the case be remanded for the ALJ to sufficiently explain why she gave "little to no weight" to Dr. Berg's opinion, guided by the factors articulated in *Johnson v. Barnhart*.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-21] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 27, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed

within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 13th day of November 2017.

Robert B. Jones, Jr.
United States Magistrate Judge